Filed 3/21/23 In re T.J. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re T.J., a Person Coming Under the Juvenile Court Law. | B322929 |
| | Los Angeles County Super. Ct. No. CK38360F |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. A.J., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robin Kesler, Juvenile Court Referee. Conditionally affirmed.

Sarah Vaona, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

Mother A.J. appeals the juvenile court's order terminating parental rights to her child T.J. She does not challenge the merits of the juvenile court's decision to terminate her rights. Mother's contention is that the Los Angeles County Department of Children and Family Services (DCFS) did not comply with its further duty of inquiry under Welfare and Institutions Code[1] section 224.2, subdivision (b), in that DCFS failed to contact the Cherokee tribe to ascertain whether the child had Indian ancestry within the meaning of section 1903 of the federal Indian Child Welfare Act (ICWA). (25 U.S.C. § 1901 et seq.)

We find DCFS erred in failing to contact the tribe after Mother indicated she believed she had Cherokee ancestry. (No fathers or paternal relatives are involved in this case as the identity of the father remains unknown.)

## BACKGROUND

On December 20, 2016, DCFS filed a section 300 petition alleging Mother had shoplifted in the presence of her children and engaged in a police pursuit with the children in the vehicle. It further alleged mother's history of substance abuse and prior child welfare history. The petition named T.J. and a sibling, but only T.J. is the subject of this appeal.

After several years of hearings and different proposed permanent plans, on August 9, 2022, the court found no exception to adoption applied, terminated Mother's parental rights, and ordered adoption by T.J.'s maternal cousin as her permanent plan.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

As for Indian ancestry, in its detention report of December 2016, DCFS indicated mother claimed possible Blackfoot or Cherokee ancestry. DCFS wrote that Mother "stated that her maternal side of the family has Blackfoot/Cherokee in their line. Past court reports have not indicated that the children qualify for ICWA." On December 20, 2016, Mother, a maternal aunt, and the maternal grandmother all indicated no known Indian ancestry. That same date the juvenile court found there was no reason to known T.J. was an Indian child.

On March 10, 2022, the court ordered DCFS to interview all known relatives about Indian ancestry and to include interview summaries in its next report. In its report filed April 1, 2022, DCFS indicated both the maternal cousin and maternal grandmother denied Indian ancestry. However, in a report filed April 12, 2022, DCFS again reported Mother believed she may have Blackfeet and Cherokee ancestry and could not provide any additional information.

The court ordered DCFS to further investigate and to provide notice to the tribes and the Bureau of Indian Affairs. DCFS sent notice to the Blackfeet Tribe in Montana only. On June 9, 2022, the tribe responded that T.J. was not eligible for enrollment. The Bureau of Indian Affairs responded as well, stating that only a tribe could determine tribal affiliation. On August 9, 2022, the juvenile court found ICWA did not apply.

## DISCUSSION

### I.     Standard of Review

The juvenile court's determination that ICWA does not apply is reviewed for substantial evidence. (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.) On review any evidence " 'which is reasonable, credible, and of solid value to support the conclusion

3

of the trier of fact' " will support the challenged findings.  (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393, abrogated on other grounds by *In re R.T.* (2017) 3 Cal.5th 622, 628–629.)  The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.  (*Id.* at p. 1394.)

II.     **Applicable Law**

In enacting ICWA, Congress found "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions."  (25 U.S.C. § 1901(4).)  ICWA reflects the intent of Congress "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs."  (25 U.S.C. § 1902.)  The court is obligated to ask each "participant" in the proceedings whether they have reason to believe the child is an Indian child and to instruct the parties to inform the court if they subsequently receive information that provides a reason to know the child is an Indian child.  (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882–883, superseded by statute on other grounds as stated in *In re E.C.* (2022) 85 Cal.App.5th 123, 147; see 25 C.F.R. § 23.107(a) (2022).)

4

ICWA authorizes states to provide even more protection than the federal statute provides. In 2006, the California legislature enacted parallel statutes to affirm ICWA's purposes and mandate compliance with ICWA in all Indian child custody proceedings. (*In re K.R.* (2018) 20 Cal.App.5th 701, 706, fn. 3.) In California, the child protection agency is obligated to ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) The child protection agency, in this case DCFS, must complete the Indian Child Inquiry Attachment form ICWA-010(A) and attach it to the petition. (Cal. Rules of Court, rule 5.481(a)(1).)

There are three distinct duties with regard to ICWA compliance: initial inquiry, further inquiry, and notice. If the initial inquiry causes the court or DCFS to have a reason to believe the child is or may be an Indian child, but there is insufficient reason to know the child is an Indian child, then further inquiry is required. (§ 224.2, subd. (e).) This "reason to believe" arises when the court or social worked has "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. (*Id.*, subd. (e)(1).) This information, upon further inquiry, could lead to a reason to know the child is an Indian child. Once there is sufficient information to believe that the children might be Indian children, responsibility for compliance with the statutes falls squarely and affirmatively on both the social services agency and the court. (*In re N.G.* (2018) 27 Cal.App.5th 474, 484.)

Further inquiry includes "(A) Interviewing the parents, Indian custodian, and extended family members[;] [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility[; and] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status or eligibility." (§ 224.2, subd. (e)(2)(A)–(C).)

In this case, Mother indicated she believed she had Blackfeet or Cherokee ancestry. The juvenile court ordered DCFS to notify the Blackfeet tribe, but inexplicably did not order notice to the Cherokee nation based on the same statement. Neither did DCFS on its own notify the Cherokee nation after it received Mother's statement.

We conclude Mother's statement, notwithstanding denials of Indian ancestry by other members of her family, is sufficient evidence to give the court and DCFS reason to believe T.J. may have Indian ancestry with the Cherokee nation. Although Mother's statement was bare bones, it did identify a particular tribe. Along with that specific identification, DCFS and the court also had identifying information for the maternal grandmother, maternal aunt, and maternal cousin, which could have aided in further inquiry. Given the named tribe and the family contact information on hand, we are not requiring DCFS to "cast about" for investigative leads. (See *In re D.S.* (2020) 46 Cal.App.5th 1041, 1053.)

We decline DCFS's invitation to characterize Mother's statement as speculation carrying little weight. She repeated her belief on two separate occasions. That she checked the boxes on the ICWA-020 form denying Indian ancestry does not necessarily nullify her oral statements. As the juvenile court never questioned her about the alleged inconsistency, our only recourse is speculation, upon which we also decline to base our ruling.

## DISPOSITION

The trial court's order is conditionally affirmed. DCFS and the juvenile court are ordered to proceed with further inquiry of the Cherokee nation as to possible Indian ancestry for the child. If further inquiry reveals no Indian ancestry, the court's permanent adoption plan remains unchanged.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

GRIMES, J.

WILEY, J.

7